UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| TIMMY LACY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-01066-JBM |
| ) | |
| JUSTIN HAMMERS, et al., ) | |
| ) | |
| Defendants. ) | |

**SUMMARY JUDGMENT ORDER**

Plaintiff, who proceeds *pro se*, filed an amended complaint under 42 U.S.C. § 1983, alleging that Defendants Justin Hammers, the Warden at Illinois River Correctional Center (River); Brad Johnson, an Internal Affairs (IA) agent; and Brittany Beard, a nurse practitioner, were deliberately indifferent to his serious medical need. Specifically, Plaintiff claimed that after he broke his nose (1) Beard and Johnson denied his request to go to the hospital and (2) Hammers ignored his requests for additional medical care.

Before the Court are separate motions for summary judgment filed by Defendants Beard [33] and Hammers and Johnson [40]. Plaintiff filed a response to Beard's motion for summary judgment [39] but failed to respond to the motion for summary judgment filed by Hammers and Johnson. Based on the parties' pleadings, depositions, affidavits, and other supporting documents, Defendants' respective motions for summary judgment are GRANTED.

**I. SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

1

R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

A party opposing a properly supported motion for summary judgment, must cite to particular parts of the record or show that the materials cited by the movant do not establish the absence of a genuine dispute. *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## II. MATERIAL FACTS

On August 14, 2015, Plaintiff broke his nose while playing basketball in the recreational yard at River. A correctional officer immediately sent Plaintiff to River's healthcare unit for medical care. Plaintiff initially saw a nurse and then Defendant Beard.

An "Offender Injury Report" dated August 14, 2015, described Plaintiff's nose as "swollen" and "deformed" with a "small amount of controlled bleeding," and that his nasal passages were "compromised but functional." (ECF 33-9: p. 12.)  After consulting with Defendant Beard, a nurse provided Plaintiff ice, Motrin, nasal spray, and scheduled an x-ray as Beard instructed.  Plaintiff was prescribed an 800-milligram (mg) tablet of Motrin to be taken three times daily for seven days and nasal spray to be used twice daily for three days.  A physician reviewed the injury report and recommended that Plaintiff request follow-up care as needed.

Defendant Johnson arrived later that day, took a picture of Plaintiff's nose, and told Plaintiff that he was placing him in investigative segregation while he investigated how Plaintiff broke his nose.  A disciplinary ticket documented that Plaintiff was placed on "investigative status for his possible involvement in a situation that may affect the safety and security of the institution." (33-1: p. 21:24; p. 22:1-3.)  Plaintiff provided Johnson the names of the four inmates he was playing basketball with, but upon his release from segregation seven days later, Plaintiff learned that Johnson had not interviewed any of his witnesses.

Plaintiff testified that he did not receive any medical care from Defendant Beard because she left him in segregation instead of sending him to a hospital.  Plaintiff acknowledged receipt of the ice, Motrin, and nasal spray but complained that (1) "his nose is sideways," (2) he has trouble breathing because one side of his nose "is clogged up," and (3) he continues to have pain in that his head and nose "get to thumping." (33-1: p. 32: 13, p. 40: 13-17.)

On August 17, 2015, an x-ray of Plaintiff's nose was taken.  A physician's report revealed a "nasal bone fracture at the mid portion of the nasal bone with inferior depression that measures approximately 3 [millimeters]." (33-9: p. 4.)  The report also revealed that Plaintiff's

3

"nasal septum appears midline" and the "visualized paranasal sinuses are clear." (*Id*.) The physician diagnosed Plaintiff with a "[m]ildly depressed nasal bone fracture." (*Id*.) Two days later, Defendant Beard reviewed the report and determined that Plaintiff did not need further treatment for his nasal fracture "other than what had already been provided." (33-2: p. 2: 7.)

On September 18, 2015, Defendant Beard examined Plaintiff and found that his lungs were clear with no odor emanating from the nostrils, which would indicate an infection. Beard prescribed Motrin and nasal spray and advised Plaintiff to avoid blowing his nose, to use cold compresses, and to seek follow-up care for persistent or worsening symptoms. Plaintiff's medical records showed that from September 18, 2015, to June 6, 2016, he sought medical care on numerous occasions but did not seek further care for his fractured nose.[1]

In her affidavit, Defendant Beard provided the following rationale underlying her treatment decisions:

> Generally speaking, fractures to the nasal cavity are only splinted, manually manipulated, or receive surgery if there is a displaced fracture of the nasal cavity. Here, [Plaintiff] only had a mild depressed fracture and the nasal septum appeared midline. This means that there was no displaced fracture and the nose was still in its proper position. This type of fracture heals on its own in approximately four weeks, and does not require a splint or surgery.

(33-2: p. 3: 10.)

On August 23, 2015, and July 30, 2016, Plaintiff sent two emergency grievances to Defendant Hammers requesting additional care for his broken nose. Hammers responded to each grievance by checking a box which indicated that Plaintiff's complaint did not constitute an emergency. Each grievance was returned to Plaintiff with the recommendation that he pursue his grievance through normal procedures.

---

[1] During that period, Plaintiff primarily sought treatment for his right knee.

4

On August 3, 2016, Plaintiff submitted a grievance concerning his broken nose through the normal grievance process. The grievance officer responded, as follows: "Based on the total review of the available information and the compliance check of the procedural due process safeguards outlined in Departmental Rule 504, this Grievance Officer is reasonably satisfied that [the healthcare unit] examined the ailment and determined that surgery was unnecessary. Denied." (33-1: p. 70: 18-24.) On September 23, 2016, Defendant Hammers approved the denial of Plaintiff's grievance.

At his deposition, Plaintiff stated that he sued Defendant Johnson because he placed him in segregation "for no reason," and he did not interview his witnesses. (33-1: p. 64: 2.) As to Defendant Hammers, Plaintiff stated that Hammers failed to respond to his grievances.

In their respective affidavits, Defendants Johnson and Hammers affirmed that rely on a medical professional's opinion regarding whether an inmate is receiving appropriate medical care. Johnson and Hammers added that they cannot order a physician to provide specific medical care to inmates or mandate that an inmate be referred to another doctor for care.

### III. THE EIGHTH AMENDMENT AND DELIBERATE INDIFFERENCE STANDARD

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of inadequate medical care, an inmate must show that the prison official acted with deliberate indifference to a serious medical need. *Id*. at 106. The deliberate indifference standard requires an inmate to satisfy a substantial threshold to maintain a claim for cruel and unusual punishment under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious

medical condition; and 2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)). To satisfy the subjective component, a plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or lay persons." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). "A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). "When a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *McGee*, 721 F.3d at 481 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008). *See Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir.

2005) ("[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference.").

## IV. ANALYSIS

### A. The Motion for Summary Judgment Filed by Defendant Beard

In his response to Defendant Beard's motion for summary judgment, Plaintiff contends that Beard was deliberately indifferent to his broken nose based on Beard's failure to (1) provide him "pain pills or any other form of treatment" for his broken nose (39: p. 2) and (2) refer him to a specialist to cast or reset his broken nose. As to his second contention, Plaintiff asserts that Beard provided the "wrong treatment." (*Id*.)

#### 1. Beard's Alleged Failure to Provide Any Medical Care

The Court notes that Plaintiff's first contention that Defendant Beard failed to provide him any medical treatment is not only directly contradicted by the record but also by his admission. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, such that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (7th Cir. 2007).

The record reveals that on August 14, 2015, Plaintiff broke his nose while playing basketball and was immediately sent to River's healthcare unit. A medical report, which documented the medical care Plaintiff received, showed that a nurse provided Plaintiff ice, prescribed Motrin and nasal spray, and scheduled an x-ray as Defendant Beard instructed. Three days later, an x-ray of Plaintiff's nose was performed.

During his deposition, the following exchange occurred:

> Q.   Okay. And when you say [Beard] didn't give you any kind of medical treatment, what do you mean by that?

> A. [Beard] let me sit up in [segregation] with a broken nose without taking me to the outside hospital. The only thing she … gave me were some 800 [mg] Ibuprofen [pills, and] saline nasal spray, to clean out my nose….

(33-1: p. 40: 8-26.)

The Court concludes that Plaintiff's contention that Defendant Beard failed to provide him any medical treatment is directly contradicted by the undisputed facts presented and does not create a genuine dispute sufficient to defeat Beard's motion for summary judgment.

## 2. Beard's Alleged Failure to Provide Proper Medical Care

Plaintiff's second contention that Defendant Beard provided the "wrong treatment" by not referring him to a specialist to cast or reset his broken nose is not the appropriate issue before the Court. Instead, the Court must determine whether Beard's actual treatment decisions demonstrated the absence of accepted professional medical judgment.

In *Odom v. Talens*, No. 2:12-CV-00251-JMS, 2014 WL 6609269, at *6 (S.D. Ind. Nov. 20, 2014), the United States District Court for the Southern District of Indiana granted summary judgment in defendant doctor's favor, finding that no further treatment was required for the plaintiff's broken nose because an x-ray revealed the absence of a deviated septum. The district court ruled that "the failure to order an [additional] x-ray does not reflect deliberate indifference but the reality that a fractured nose such as [the plaintiff's] must simply heal on its own." *Id*.

In this case—as in *Odom*—Defendant Beard reviewed Plaintiff's x-ray and having found no displaced fracture of the nasal cavity, determined that further medical treatment was not necessary because "[t]his type of fracture heals on its own in approximately four weeks." (33-2: p. 3: 10.) *See Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008) (quoting *Estelle*, 429 U.S. at 107 ("[T]he question of whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). The Court is

satisfied that Beard's medical decisions demonstrated professional judgment. At most, Plaintiff's insistent that Beard should have referred him for essentially a second medical opinion demonstrates a mere disagreement with Larson's medical decision, which does not state a claim for deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (stating that a plaintiff's disagreement with medical professionals about medical care does not state a cognizable Eight Amendment claim under the deliberate-indifference standard). Accordingly, the Court grants summary judgment in Beard's favor.

### B. The Motion for Summary Judgment Filed by Defendants Hammers and Johnson

As previously noted, Plaintiff has not filed a response to the motion for summary judgment filed by Defendants Hammers and Johnson and as a result, Plaintiff fails to comply with Rule 56(c) in that he has not cited "particular parts of materials in the record" that support his opposition or "show[] that the materials cited do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B). Plaintiff's failure to appropriately respond is deemed an admission of the summary-judgment motion. *See* Local Rule 7.1(D)(2) (delineating the mandatory requirements of a response to a motion for summary judgment). Accordingly, the Court considers the facts Hammers and Johnson have provided and supported by admissible evidence undisputed. Although Plaintiff's failure to respond requires this Court to deem those factual assertions admitted, summary judgment in favor of the movant is not automatic. *Wienco, Inc. v. Katahn Associates, Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). In such circumstances, a district court must make the further finding that given the undisputed facts, summary judgment is proper as a matter of law. *Id*.

Plaintiff stated during his deposition that he brought suit against Defendant Johnson because Johnson placed him in segregation "for no reason," and he did not interview his

9

witnesses. (33-1: p. 64: 2.) However, the Court rejects that such an assertion creates a genuine dispute on the issue of whether Johnson was deliberately indifferent to Plaintiff's broken nose. Moreover, Plaintiff's claim that Johnson sent him to segregation for no reason is blatantly contradicted by the record. The undisputed facts show that Johnson segregated Plaintiff as a precautionary safety and security measure while he investigated Plaintiff's account of how he broke his nose.

As to Defendant Hammers, Plaintiff stated that Hammers failed to respond to his grievances regarding his need for additional medical treatment. However, the record shows that Hammers did respond to Plaintiff's August 23, 2015, and July 30, 2016, emergency grievances by returning those grievances because Hammers determined that Plaintiff did not allege an emergency. In so concluding, Hammers recommended that Plaintiff pursue his grievance through normal procedures. Hammers also approved the grievance officer's denial of the August 3, 2016, grievance Plaintiff submitted under normal grievance procedures.

In their motion for summary judgment, Defendants Hammers and Johnson assert that with regard to Plaintiff's deliberate-indifference claim, they were entitled to rely on the judgments of the medical professionals who were treating Plaintiff. *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals.").

In this case, the deliberate-indifference claim against Defendants Hammers and Johnson is based on Plaintiff's overarching belief that he should have been referred to a specialist to cast or reset his broken nose. Absent a belief or actual knowledge that medical professionals are mistreating or not treating an inmate, which has not been alleged in this case, Hammers and

Johnson were entitled to rely on Defendant Beard's medical opinion that no further medical treatment was required to treat Plaintiff's broken nose. *See McGee*, 721 F.3d at 483 (quoting *King*, 680 F.3d at 1018) ("The only exception to [the aforementioned] rule is that nonmedical officers may be found deliberately indifferent if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.' ").

Given this Court's previous determination that Defendant Beard's treatment of Plaintiff's broken nose was appropriate and did not show deliberate indifference, the Court declines to conclude that reliance on Beard's medical decisions by Defendants Hammers and Johnson nonetheless created a genuine dispute sufficient to preclude summary judgment in their favor. Accordingly, the Court grants their motion for summary judgment.

## V. QUALIFIED IMMUNITY

Because the Court has found that Defendants were not deliberately indifferent as Plaintiff has alleged, the Court need not address their respective claims that they were entitled to qualified immunity. *Van den Bosch v. Raemisch*, 658 F.3d 778, 787, n. 9 (7th Cir. 2011).

**IT IS THEREFORE ORDERED**:

> **1) The motion for summary judgment filed by Defendant Beard [33] is GRANTED pursuant to Fed. R. Civ. P. 56.**
>
> **2) The motion for summary judgment filed by Defendants Hammers and Johnson [40] is GRANTED pursuant to Fed. R. Civ. P. 56.**
>
> **3) The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. The case is terminated, with the parties to bear their own costs. All deadlines and internal settings are vacated. All pending motions not addressed in this Order are denied as moot. Plaintiff remains responsible for the $350 filing fee.**
>
> **4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir.**

**1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith");** *Walker v O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered December 4, 2017.

                                      s/ Joe Billy McDade
                              _____
                                       JOE BILLY McDADE
                              UNITED STATES DISTRICT JUDGE